UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 17-62407-CV-MORENO
MAGISTRATE JUDGE REID

CECIL TOLBERT,

      Petitioner,

v.

STATE OF FLORIDA,

      Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

Petitioner, **Cecil Tolbert**, has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, attacking his convictions and sentences entered in Broward County Circuit Court, Case No. 09006570CF10A. [ECF No. 1]. This cause has been referred to the Undersigned for consideration and report, pursuant to 28 U.S.C. § 636(b)(1)(B), (c); S.D. Fla. Admin. Order 2019-02; and the Rules Governing Habeas Corpus Petitions in the United States District Courts. [ECF No. 32]. For its consideration of the Petition [ECF No. 1], the Court has received the state's Response to this Court's Order to Show Cause [ECF No. 34], along with supporting appendices [ECF Nos. 35, 36].

Construing the arguments liberally as afforded *pro se* litigants, pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises the following grounds:

**Claim 1A**: Defense counsel was ineffective in failing to provide Petitioner with witness depositions prior to trial. [ECF No. 1 at 4-5].

**Claim 1B**: Defense counsel was ineffective in failing to file a motion to suppress DNA evidence and failing to later object to its admission. [ECF No. 1 at 5].

1

**Claim 1C**: Defense counsel was ineffective in failing to hire an expert witness to challenge the DNA evidence as inadmissible. [ECF No. 1 at 5].

**Claim 1D**: Defense counsel was ineffective in failing to retain an expert witness to challenge the mental state of the victim regarding the effects of Zoloft and Xanax. [ECF No. 1 at 6].

**Claim 1E**: Defense counsel was ineffective in failing to object to alleged hearsay testimony by DNA expert witness Lynn Baird. [ECF No. 1 at 6].

**Claim 2**: The trial court denied him a fair trial when it allowed Lynn Baird to testify that another DNA analyst, Ken Noppinger, found male DNA in a sample taken from the victim. [ECF No. 1 at 7].

**Claim 3**: The evidence was insufficient to support the jury's factual finding that a firearm was used during the crimes. [ECF No. 1 at 8-9].

**Claim 4**: Law enforcement officers coerced the victim to identify the Petitioner as the assailant with an improper identification process. [ECF No. 1 at 10-11].

**Claim 5**: The prosecutor relied on false evidence and perjured testimony at trial. [ECF No. 1 at 11].

**Claim 6**: The results of the DNA tests were manipulated by using "forensic fraud" and "examiner bias." [ECF No. 1 at 11-12].

**Claim 7**: The state's witness, Lynn Baird, was not qualified to give expert testimony regarding DNA. [ECF No. 1 at 12].

**Claim 8**: Defense counsel was ineffective in failing to investigate Lynn Baird's qualifications as an expert. [ECF No. 1 at 12-13].

**Claims 9 & 10**: Petitioner presents as "newly discovered evidence" a report from the American Society of Crime Laboratory Directors, Laboratory Accreditation Board, which discusses deficiencies with DNA testing. [ECF No. 1 at 13-14].

After reviewing the pleadings, for the reasons stated in this Report, the Undersigned

recommends that the Petition be denied because Petitioner is not entitled to relief on the merits.

## II. Factual and Procedural History

### Charges

The state charged Petitioner by information with armed kidnaping in violation of Fla. Stat.

2

§ 787.01 (Count 1) and two counts of armed sexual battery on a victim over 12 years old in violation of Fla. Stat. § 794.011(3) (Counts 2 & 3). [ECF No. 35-1 at 11-13].

**Trial**

On direct appeal, the Fourth District Court of Appeal ("Fourth DCA") provided the following detailed description of the facts introduced at trial.

On July 11, 1996, the victim was walking to a store at about 1:30 a.m. As the victim was walking, a man drove his car near the victim, threatened her with a gun, and told the victim to get into the car. The victim got into the car, and the man drove to an area behind a warehouse. The man forced the victim to perform oral sex on him and vaginally raped her. At some point, the back of the victim's head was injured and she passed out or fell asleep. When the victim awoke, the man sexually assaulted her again. The man then released the victim.

The victim went to a hospital and was treated for the injury on the back of her head. The victim then went to a sexual assault treatment center, where a nurse practitioner took vaginal swabs. The swabs were sealed and sent to the Broward Sheriff's Office ("BSO").

Kevin Noppinger, a DNA analyst with the BSO, analyzed the swabs using restriction fragment length polymorphism (RFLP) testing. Noppinger found male DNA in the swabs taken from the victim, but the DNA profile did not match any known suspect.

By 2001, DNA technology had advanced to a method called short tandem repeat (STR). FN1. RFLP results and STR results cannot be compared, so older DNA samples that had been tested using the RFLP method had to be retested using the STR method. BSO had insufficient resources to retest the older samples, and in 2003 the federal government provided a grant to allow BSO to outsource the retesting of older DNA samples to reduce the backlog. BSO selected older DNA samples that had yielded RFLP results and outsourced the samples to Bowdy Technology ("Bowdy") for STR testing. Bowdy tested the samples from the victim's case. The Bowdy analysts found the victim's DNA in the samples but, unlike BSO analyst Noppinger, the Bowdy analysts did not find male DNA in the portion of the victim's samples they tested.

FN1 Lynn Baird, a BSO DNA analyst, described the STR method as a technique that detects DNA fragments and makes millions of copies of the fragments, which allows the DNA analyst to compare very small amounts of DNA to a suspect's DNA.

Bowdy reported its results to BSO. Lynn Baird, a BSO DNA analyst,

hypothesized that there must have been male DNA in the samples taken from the victim because Noppinger had found it during the 1996 testing. Assuming that the STR testing performed by Bowdy may have simply failed to detect the male DNA, Baird herself retested the victim's samples and, in fact, found male DNA. Using the STR method, Baird isolated the male DNA profile and provided it to the Combined DNA Index System (CODIS) FN2, a federal database of DNA profiles.

> FN2 CODIS includes the National DNA Index System (NDIS), which is a database of DNA profiles contributed by federal and state forensic laboratories that was implemented in 1998. *See* 42 U.S.C. § 14132 (2006) (authorizing establishment of DNA index system).

CODIS matched the male DNA profile from the victim's sample to Tolbert's DNA sample. BSO then located Tolbert and received a DNA sample from him, which Baird then compared to the male DNA sample she recovered from the victim's sample. Baird determined Tolbert's DNA was in the victim's sample, leading to the state charging Tolbert in the instant case.

At the 2011 trial, the victim was unable to remember several portions of the 1996 incident. The victim was unable to identify Tolbert as the man who raped her and the state's primary evidence of Tolbert's involvement in the crime was the DNA evidence.

BSO DNA analyst Baird testified at trial. During her direct examination, the state asked her about Noppinger's findings from the 1996 testing:

> The state: Did you receive a sample of a DNA involving [the victim] and an unknown suspect?
>
> ...
>
> Baird: I personally—it was submitted to the laboratory but I personally did not do the original analysis on this case.
>
> The state: When—were you able to refer to the report that was done back then?
>
> Baird: Yes.
>
> The state: What was originally detected back in 1996?
>
> The defense: Objection, hearsay.
>
> The court: I'm gonna overrule that.
>
> Baird: The analysis in 1996 was originally performed by Kevin Noppinger ... he was able to detect spermatozoa, that's the male reproductive cell, on the vaginal swabs submitted as being in [the victim]. He did the RFLP DNA analysis on that item and he obtained

a foreign DNA profile that was foreign to [the victim]. So at that point that was basically where the case stopped. We knew we had a foreign DNA profile there but we had no one to compare it to.

Baird then went on to describe how the samples were sent to Bowdy and that Bowdy did not find male DNA in the samples. Baird explained that the manner in which Bowdy tested the samples could account for the failure to find the male DNA in the sample. An analyst from Bowdy who tested the samples testified that occasionally a DNA profile was missed when only a portion of the samples were tested. The Bowdy analyst also testified that she herself had missed such samples in the past.

Baird explained to the jury that she retested the samples, found male DNA, and isolated the male DNA profile. Baird also testified that after Tolbert's DNA profile was provided to her, she compared Tolbert's DNA to the male DNA in the sample taken from the victim. Baird testified that Tolbert's DNA was in the sample taken from the victim.

Martin Tracey, a biology professor specializing in population genetics, testified that the odds of "reaching into the human population and pulling out another individual with the same genetic sequence as Cecil Tolbert" were "approximately one in four hundred and eighty-seven quadrillion."

*Tolbert v. State*, 114 So. 3d 291, 292-94 (Fla. 4th DCA 2013).

**Judgment/Sentence**

On November 30, 2011, the jury found Petitioner found guilty as charged. [ECF No. 35-1 at 33-35]. On January 6, 2012, the state trial court sentenced Petitioner to life imprisonment as a habitual felony offender under Count 1, to thirty years in prison as to Count 2 and as to Count 3, all to run concurrently. [ECF No. 35-1 at 49].

**Direct Appeal**

Petitioner appealed. [ECF No. 35-1 at 44-61]. Petitioner alleged that the trial court erred in allowing the state's DNA expert bolter her testimony with a non-testifying expert's opinion. [ECF No. 35-1 at 46]. Petitioner raises a similar argument under Claim 2 in the instant proceedings.

On May 1, 2013, the Fourth DCA affirmed his convictions and sentences with a written opinion in *Tolbert v. State*, 114 So. 3d 291 (Fla. 4th DCA 2013) (*per curiam*). Mandate issued

June 28, 2013. [ECF No. 35-1 at 94]. Petitioner sought discretionary review with the Florida Supreme Court. [ECF No. 35-1 at 96-107]. On August 16, 2013, the Supreme Court declined to accept jurisdiction. [ECF No. 35-1 at 120]. *See also Tolbert v. State*, 122 So. 3d 870 (Fla. 2013).

**Petition for Writ of Habeas Corpus in the Fourth DCA**

On July 10, 2014, Petitioner filed a petition for writ of habeas corpus in the Fourth DCA in which he argued that appellate counsel was ineffective on direct appeal. [ECF No. 35-1 at 124-34]. On September 19, 2014, the Fourth DCA denied the petition on the merits. [ECF No. 35-1 at 136]. On December 22, 2014, the Fourth DCA denied Petitioner's motion for rehearing. [ECF No. 35-1 at 145].

**Rule 3.850 Postconviction Motion**

On September 16, 2014, Petitioner filed a *pro se* motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. [ECF No. 35-1 at 147-74]. Petitioner raised the following claims: (1) Defense counsel was ineffective in failing to provide Petitioner with witness depositions prior to trial; (2) Defense counsel was ineffective in failing to file a motion to suppress the DNA evidence, failing to object to the admission of DNA evidence, and failing to hire a DNA expert witness; (3) Defense counsel was ineffective in failing to retain an expert witness to challenge the mental state of the victim regarding the effects of Zoloft and Xanax; (5) Defense counsel was ineffective in failing to object to alleged hearsay testimony by DNA expert witness Lynn Baird; (8) The evidence was insufficient to support the jury's factual finding that a firearm was used during the crimes; (9) Law enforcement officers coerced the victim to identify the Petitioner as the assailant with an improper identification process; (10) The prosecutor relied on false evidence and perjured testimony at trial; (11) The results of the DNA tests were manipulated by using forensic fraud and examiner bias; and (12) Defense counsel was ineffective in failing to investigate Ms. Baird's

qualifications as an expert. [*Id.*]. Petitioner raises these same claims in the instant proceedings under claims 1A, 1B, 1C, 1D, 1E, 3, 4, 5, 6, 7 and 8. The state filed a response in opposition to the motion. [ECF No. 35-1 at 221]. In a second supplemental Rule 3.850 motion, Petitioner claimed that a report from the American Society of Crime Laboratory Directors, Laboratory Accreditation Board, which discusses certain deficiencies with DNA testing constituted newly discovered evidence. [ECF No. 35-2 at 154-186]. Petitioner raises this argument under claims 9 and 10 in his § 2254 petition. The state filed a response to Petitioner's supplemental claims. [ECF No. 35-2 at 164-68; ECF No. 35-4 at 12-16].

On March 24, 2017, the trial court dismissed Petitioner's motion for the reasons put forth by the state. [ECF No. 35-4 at 18-24].

Petitioner appealed. [ECF No. 35-4 at 36]. On July 20, 2017, the Fourth DCA *per curiam* affirmed without written opinion in *Tolbert v. State*, 228 So. 3d 573 (Fla. 4th DCA 2017). [ECF No. 35-4 at 82]. Petitioner filed a motion for rehearing, which the Fourth DCA denied. [ECF No. 35-4 at 84-91]. Mandate issued October 6, 2017. [ECF No. 35-4 at 93]. Petitioner then sought discretionary review in the Florida Supreme Court. [ECF No. 35-4 at 95]. The supreme court declined jurisdiction on October 11, 2017 in *Tolbert v. Supreme Court of Florida*, 2017 WL 4535064 (Fla. 2017). *See also* [ECF No. 35-4 at 120].

**Petition for DNA Evidence Examination**

On June 21, 2018, Petitioner filed a petition for a DNA evidence examination in the state trial court. [ECF No. 35-4 at 122-29]. The state filed a response in opposition. [ECF No. 35-4 at 132-35]. The trial court issued an order denying the petition. [ECF No. 35-4 at 200-03]. Petitioner appealed. [ECF No. 35-4 at 205]. On November 8, 2018, the Fourth DCA *per curiam* affirmed without written opinion in *Tolbert v. State*, 258 So. 3d 440 (Fla. 4th DCA 2018). [ECF No. 35-4

at 224]. Mandate issued December 7, 2018. [ECF No. 35-4 at 226].

**28 U.S.C. § 2254 Petition**

Petitioner came to this court filing his § 2254 petition on November 22, 2017. [ECF No. 1 at 16]. The previous Magistrate Judge issued a Report recommending that the Petition be dismissed as time-barred, which the District Court adopted. [ECF Nos. 5, 8]. The Eleventh Circuit reversed the District Court decision holding that the Petition was timely. [ECF No. 31].

The District Court reopened the case and rereferred the matter to the Undersigned, who issued Order to Show Cause to the state [ECF Nos. 32, 33]. The state filed a Response with supporting exhibits. [ECF Nos. 34, 35, 36]. Petitioner filed a Reply thereto. [ECF No. 42].

### III. Exhaustion

The state argues that some of the claims are unexhausted and procedurally defaulted from federal habeas review for a variety of reasons. [ECF No. 34 at 9-17]. Nevertheless, the state addresses the merits of each claim. [*Id.* at 27-63].

Pursuant to 28 U.S.C. § 2254(b)-(c), petitioners must exhaust their claims before presenting them in a federal habeas petition. When petitioners do not properly present their claims to a state court by exhausting those claims and complying with the applicable state procedure, § 2254 may bar federal review of those claims in federal court. *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing 28 U.S.C. § 2254(b)-(c)). When it is unclear or less efficient to resolve whether the additional restriction in § 2254(d) applies, federal courts may also deny writs of habeas corpus under § 2254 by engaging in *de novo* review, a more favorable standard, as a habeas petitioner would surely not be entitled to a writ under § 2254(d) if the claim would fail under *de novo* review. *See, e.g.*, *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010); *see also Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014); *Trepal v. Sec'y, Fla. Dep't of Corr.*, 684 F.3d 1088, 1109-

10 (11th Cir. 2012).

Pursuant to 28 U.S.C. § 2254(b)(2), the Court has authority to address unexhausted claims when a denial is appropriate on the merits. *See Berghuis*, 560 U.S. at 390. To promote judicial efficiency, the merits of the allegedly unexhausted claims has been addressed within this Report.

### IV. Governing Legal Principles

This Court's review of a state prisoner's federal petition for habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996). "The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, GDCP*, 818 F.3d 600, 642 (11th Cir. 2016) (quoting *Greene v. Fisher*, 565 U.S. 34, 38 (2011)). In fact, federal habeas corpus review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" *Id.* at 642 (quoting *Hill v. Humphrey*, 662 F.3d 1335, 1343 (11th Cir. 2011)), and is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

The federal habeas court is first tasked with identifying the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court is not required to issue an opinion explaining its rationale, because even the summary rejection of a claim, without explanation, qualifies as an adjudication on the merits which warrants deference. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011); *see also Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008); *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558 (2018).

Where the claim was "adjudicated on the merits" in the state forum, § 2254(d) prohibits

relitigation of the claim unless the state court's decision was (1) "**contrary to**, or involved **an unreasonable application of**, clearly established Federal law,[1] as determined by the Supreme Court of the United States;" or, (2) "based on an **unreasonable determination** of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d); *see also Harrington*, 562 U.S. at 97-98; *Williams v. Taylor*, 529 U.S. 362, 413 (2000). When relying on § 2254(d)(2), a federal court can grant relief if the state court rendered an **erroneous factual determination**. *See Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016).

Because "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," *Burt v. Titlow*, 571 U.S. 12, 20 (2013), federal courts may "grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" *Tharpe*, 834 F.3d at 1338 (11th Cir. 2016) (quoting *Harrington*, 562 U.S. at 102). This standard is intentionally difficult to meet. *See Harrington*, 562 U.S. at 102.

Petitioner alleges **ineffective assistance of counsel**. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them. *See Strickland v. Washington*, 466 U.S. 668, 684–85 (1984). When assessing counsel's performance under *Strickland*, the court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that:

---

[1] "Clearly established Federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the Supreme Court at the time the state court issues its decision. *See White v. Woodall*, 572 U.S. 415, 419 (2014); *see also Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

(1) his or her counsel's **performance was deficient**, i.e., the performance fell below an objective standard of reasonableness; and, (2) he or she suffered **prejudice** as a result of that deficiency. *See id.* at 687-88.

To establish **deficient performance**, Petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. *See id.*; *see also Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009). The review of counsel's performance should focus on "not what is possible or what is prudent or appropriate but only [on] what is constitutionally compelled." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Regarding the **prejudice** component, the Supreme Court has explained "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697. Further, counsel is not ineffective for failing to raise non-meritorious issues. *See Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. *See Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Furthermore, a § 2254 Petitioner must provide factual support for his or her contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012).

### V. Discussion

Under **Claim 1A**, Petitioner asserts that defense counsel was ineffective in failing to provide Petitioner with witness depositions prior to trial. [ECF No. 1 at 4-5].

At the conclusion of the evidence, Petitioner told the trial court that counsel "ha[d] been exemplary in her representation." [ECF No. 36, Trial Transcripts, T. 368]. Even if counsel's failure to provide Petitioner with these depositions constituted deficient performance, Petitioner cannot establish prejudice under *Strickland*. Jean Swaby testified that she collected the DNA evidence from the victim shortly after the crime occurred. [T. 342-344]. Lynn Baird's testing of the DNA utilizing STR analysis identified Petitioner with an extremely high probability as the person that committed the crime. [T. 307-313, 350-351]. Swaby and Baird were present in court and Petitioner had the opportunity to cross-examine each of them. [T. 302-344]. In light of this overwhelming evidence, Petitioner cannot show prejudice.

Petitioner also argues that without these deposition transcripts, he was unable to make a decision regarding whether to enter a plea deal or proceed to trial. This claim is conclusory and fails for this reason alone. *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Habeas corpus petitions must meet heightened pleading requirements." (citing R. 2(c), Rules Governing § 2254 Cases)); *see also Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]").

The trial court's rejection of this claim in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 1B**, Petitioner asserts that defense counsel was ineffective in failing to file a motion to suppress the DNA evidence and/or failing to object to the admission of DNA evidence. [ECF No. 1 at 5]. Under **Claim 1C**, Petitioner asserts that defense counsel was ineffective in failing to hire an expert witness to challenge the DNA evidence as inadmissible. [ECF No. 1 at 5]. These claims are related.

In the post-conviction proceedings, Petitioner argued that counsel should have moved to suppress the DNA evidence and called a DNA expert witness to testify for the defense because an independent lab, Bode Technology Group ("Bode"), found the DNA inconclusive. [ECF No. 35-1 at 149-50]. The state trial court found that the claim was "legally insufficient and fail[ed] to allege any material prejudice, further, it [was] speculative in nature and [did] not support a claim upon which relief [could] be granted." [ECF No. 35-4 at 22].

Petitioner's claims fail for several reasons. First, Petitioner mischaracterizes the DNA testimony. Bode employee Margaret Ewing tested and then retested the DNA sample taken from the victim. [T. 296]. Ewing testified that both times she tested she found no male profile. [*Id.*]. Ewing performed the tests using STR analysis. [T. 290-92, 294, 299].

The state's expert witness, Lynn Baird, testified to the following. The Bode test lacked "inhibition control." [T. 313-14]. Inhibition occurred when the analysis "amplif[ied] too much DNA." [T. 315]. In 2007, she analyzed the vaginal swab taken from the victim. [T. 310]. In addition to the victim's DNA, she found at least one male contributor. [*Id.*]. Baird was able to develop an almost full profile for the male contributor. [T. at 314]. In 2009, Baird received a DNA sample from Petitioner, which matched the DNA of the male contributor she had developed in 2017. [T. 312-13].

Petitioner fails to allege any ground upon which the trial court could have excluded the DNA evidence. Therefore, Petitioner cannot demonstrate prejudice under *Strickland*, because there is no reasonable probability that challenging the credibility and reliability of the DNA evidence would have resulted in a different outcome at trial.

To the extent Petitioner is challenging the weight of the DNA evidence, rather than the admissibility, Petitioner's claim fails because defense counsel thoroughly cross-examined Lynn

Baird. *See* [T. 326-36, 340-41]. Defense counsel also objected to the introduction of the rape kits into evidence after a voir dire examination of Baird, which the court initially sustained, but eventually admitted, over objection, after further testimony. [T. 316-21].

Petitioner's claim that counsel was ineffective in failing to call an expert to rebut the state's expert testimony is also without merit. Federal habeas corpus petitioners asserting claims of ineffective assistance, based on counsel's failure to call a witness (either a lay witness or an expert witness), must satisfy the prejudice prong of *Strickland* by naming the witness, demonstrating the witness was available to testify and would have done so, setting out the content of the witness' proposed testimony, and showing the testimony would have been favorable to a particular defense. *See Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010); *see also Reed v. Sec'y, Fla. Dep't of Corr.*, 767 F.3d 1252, 1262 (11th Cir. 2014) (holding habeas petitioner who failed to show an uncalled witness was available to testify at the time of trial failed to satisfy prejudice prong of *Strickland*).

"A decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004); *see also Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995). A petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1324 (11th Cir. 2002).

Petitioner has not adequately explained his issue with Lynn Baird's DNA analysis, nor has he attached an affidavit from any expert which shows where Baird's analysis was flawed. Mere speculation that witnesses might have provided helpful testimony is insufficient to establish that counsel's decision not to call them was deficient. *See Streeter v. United Sta*tes, 335 F. App'x 859, 864 (11th Cir. 2009) (citing *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001)).

Ultimately, trial counsel's decision not to call a DNA expert was a strategic decision based

on the defense presented at trial. The defense was not based on any deficiency in the DNA testing. Instead, counsel pointed to inconsistencies in the victim's testimony and argued that the victim and Petitioner engaged in consensual sexual contact. Petitioner has not demonstrated that counsel's decision not to retain an expert was an unreasonable strategy. *See Carroll v. State*, 815 So. 2d 601, 613 n. 14 (Fla. 2002) (concluding that trial counsel's decision not to retain a DNA expert was reasonably strategic where counsel spoke with several DNA experts in preparation for dealing with the DNA evidence, the DNA evidence "was pretty solid," the FBI lab was under no scrutiny at the time, and counsel sought to exclude the evidence during trial and testified that the retention of an expert would have done the defendant a disservice).

The trial court's rejection of claims 1B and 1C in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 1D**, Petitioner asserts that defense counsel was ineffective in failing to retain an expert witness to challenge the mental state of the victim regarding the effects of Zoloft and Xanax. [ECF No. 1 at 6].

Petitioner has not shown that any expert would have testified to the theories espoused by Petitioner and a decision whether to call a particular witness is generally a question of trial strategy that should seldom be second guessed. *See Streeter*, 335 F. App'x at 864; *see also Conklin*, 366 F.3d at 1204; *Carroll*, 815 So. 2d at 613 n. 14. Furthermore, Petitioner has failed to show prejudice where trial counsel effectively cross-examined the victim about her mental state at the time of the crime, as well as her ability to remember. *See* [T. 235-57]. Defense counsel also challenged the victim's reliability due to her mental health condition. [*Id.*].

The trial court's rejection of this claim in the Rule 3.850 proceedings, affirmed by the

appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 1E**, Petitioner asserts that defense counsel was ineffective in failing to object to alleged hearsay testimony by DNA expert witness Lynn Baird. [ECF No. 1 at 6].

Petitioner's claim is refuted by the record. Defense counsel did in fact object to this testimony, preserving the issue for appeal. [T. 306]. Petitioner then raised the claim on appeal. The Fourth DCA found the error to be harmless. *See Tolbert*, 114 So. 3d at 291. Petitioner cannot establish deficient performance or prejudice under *Strickland*.

The trial court's rejection of this claim in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 2**, Petitioner asserts that the trial court denied him a fair trial when it allowed Lynn Baird to testify that another DNA analyst, Ken Noppinger, found male DNA in a sample taken from the victim. [ECF No. 1 at 7].

Petitioner raised a similar claim on direct appeal, arguing that the trial court erred by allowing Baird to testify regarding Noppinger's 1996 DNA testing results. *See Tolbert*, 114 So. 3d at 294. After agreeing with Petitioner that Baird's testimony constituted hearsay, the Fourth DCA found the error harmless:

> [I]n this case the discussion of the non-testifying expert's findings did not directly implicate Tolbert. Baird's discussion of Noppinger's findings established why Baird chose to retest the victim's sample after Bowdy did not find male DNA in the sample; Noppinger's findings did not independently establish Tolbert's guilt. Baird did not consult with Noppinger to reach her conclusion or rely on any of his conclusions; she independently tested the victim's sample and determined that the male profile matched Tolbert. Baird's discussion of the 1996 testing bolstered her expert opinion only to the extent that it supported her finding that there was male genetic material in the sample taken from the victim. The more important portion of Baird's testimony was that the male profile in the victim's sample matched

Tolbert, and the 1996 test results were never matched to Tolbert.

Tolbert argues the hearsay evidence was harmful because the DNA evidence was essentially the only evidence of Tolbert's guilt and because Bowdy did not find a male profile in the victim's sample. Tolbert argues that if the jury had not heard that Noppinger found male DNA in the victim's sample in 1996, the jury would have disbelieved Baird's assertion that there was male DNA in the sample or the jury would have believed the victim's sample was contaminated.

Baird testified that she tested the samples taken from the victim, she found and isolated male DNA in the sample, and she determined that the male DNA from the victim's sample matched Tolbert's DNA. Baird and the analyst from Bowdy both testified that it was possible to miss a male DNA profile in a sample, they offered explanations for how the male profile was missed in this case, and the Bowdy analyst testified that she had missed such profiles in the past. Most importantly, Noppinger's findings did not implicate Tolbert because Noppinger only found an un-matched DNA profile. We determine, under the facts of this case, that the error in admitting the hearsay evidence was harmless.

*Id.*

Errors of state evidentiary law are not a basis for federal habeas relief unless they result in constitutional error. "[F]ederal courts will not generally review state trial courts' evidentiary determinations." *Taylor v. Sec'y, Fla. Dep't of Corr.*, 760 F.3d 1284, 1295 (11th Cir. 2014). Habeas relief is warranted only when the error "so infused the trial with unfairness as to deny due process of law." *Id.* (citation omitted). Petitioner cannot show that any error in admitting Baird's testimony regarding the 1996 test results "infused the trial with unfairness." *See id.*

In this case, Jean Swaby testified that she collected the DNA evidence from the victim shortly after the crime occurred. [T. 342-344]. Lynn Baird's testing of the DNA utilizing STR analysis identified Petitioner with an extremely high probability as the person that committed the crime. [T. 307-313, 350-351]. Swaby and Baird were present in court and Petitioner had the opportunity to cross-examine each of them. [T. 302-344]. Petitioner was identified utilizing STR analysis, there is no probability that the jury convicted him through reference to Noppinger's testing, using the outdated RFPL analysis.

The Fourth DCA's rejection of this claim on direct appeal is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed. *See Williams*, 529 U.S. at 413. Furthermore, applying a *de novo* review, Petitioner's claim fails. *See Berghuis*, 560 U.S. at 390; *see also Hittson*, 759 F.3d at 1248; *Trepal*, 684 F.3d at 1109-10.

Under **Claim 3**, Petitioner asserts that the evidence was insufficient to support the jury's factual finding that a firearm was used during the crimes. [ECF No. 1 at 8-9].

This claim is conclusory and fails for this reason alone. *See McFarland*, 512 U.S. at 856 ("Habeas corpus petitions must meet heightened pleading requirements." (citing R. 2(c), Rules Governing § 2254 Cases)); *see also Garlotte*, 515 U.S. at 46 ("[T]he habeas petitioner generally bears the burden of proof[.]").

Furthermore, Petitioner's claim is refuted by the record, which included sufficient evidence to permit the jury to find that Petitioner possessed a firearm on the night in question. The victim testified that when her assailant pulled up in the car, he threatened her with a gun. [T. 218-19, 220]. She further testified that even though she did not see the gun at the warehouse area, she was sure her assailant still had it. [T. 232]. Finally, Jean Swaby testified that in 1996, after the incident, the victim told Ms. Swaby that she had been threatened with a gun. [T. 283].

The trial court's rejection of this claim in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 4**, Petitioner asserts that law enforcement officers coerced the victim to identify Petitioner as the assailant with an improper identification process. [ECF No. 1 at 10-11].

Petitioner's conviction was not based on the victim's identification but based on the presence of the Petitioner's DNA on the victim's vaginal swabs. In fact, the victim was unable to

18

identify Petitioner as the person who committed this crime. [T. 232-33]. Additionally, Detective Hendell testified that he gave no details to the victim at all prior to his interview with her. [T. 261].

Under the totality of the circumstances, including the strength of the evidence of the Petitioner's guilt, any error in the identification process was at worst no more than harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (a petitioner is entitled to federal habeas relief only if the constitutional error from his trial had substantial and injurious effect or influence in determining the jury's verdict) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

As a result, the trial court's rejection of this claim in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 5**, Petitioner asserts that the prosecutor relied on false evidence and perjured testimony at trial. [ECF No. 1 at 11].

The standard for federal habeas corpus review of a claim of prosecutorial misconduct is whether the alleged actions rendered the entire trial fundamentally unfair. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974); *see also Hall v. Wainwright*, 733 F.2d 766, 733 (11th Cir. 1984). In assessing whether the fundamental fairness of the trial has been compromised, the court must consider the totality of the circumstances in the context of the entire trial. *See Davis v. Zant*, 36 F.3d 1538, 1551 (11th Cir. 1994). "Such a determination depends on whether there is a reasonable probability that, in the absence of the improper remarks, the outcome of the trial would have been different." *Williams v. Weldon*, 826 F.2d 1018, 1023 (11th Cir. 1988).

Petitioner alleges that the prosecutor elicited false testimony from Lynn Baird. This claim is refuted by the record. Baird testified that Kevin Noppinger found male DNA in the vaginal swabs but could not match the DNA to a known suspect. [T. 306]. Baird conducted her own testing.

Her testimony clearly demonstrated that she had the ability to do the testing and render an expert opinion. Petitioner's allegation that Ms. Baird made false statements about the report of Mr. Noppinger is unfounded and unsupported by the record. Petitioner's claim also fails because it is conclusory. *See McFarland*, 512 U.S. at 856; *see also Holsey*, 694 F.3d at 1256.

The trial court's rejection of this claim in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 6**, Petitioner asserts that the results of the DNA tests were manipulated by using "forensic fraud" and "examiner bias." [ECF No. 1 at 11-12].

As a preliminary matter, this claim is conclusory and fails for this reason alone. *See McFarland*, 512 U.S. at 856; *see also Holsey*, 694 F.3d at 1256.

Furthermore, Petitioner's allegations are unsupported by the record. Petitioner claims that his DNA was planted in the victim's vaginal swab. The victim testified that shortly after the attack, she went to the Sexual Assault Treatment Center to report the incident. [T. 228-30]. Jean Swaby testified that she worked at the center at the time and took vaginal and oral swabs from the victim. [T. 274, 282]. Lynn Baird testified that in 2007 she developed an almost full profile for the male contributor to the DNA found on the vaginal swabs. [T. 310-12]. In 2009, Baird received an oral swab belonging to Petitioner which matched the DNA profile on the victim's vaginal swab. [T. 312-13]. When the state asked population genetics expert Martin Tracey, ""[w]hat are the odds of reaching into the human population and pulling out another individual with the same genetic sequence" of Petitioner, he responded, "approximately one in four hundred and eighty-seven quadrillion." [T. 350-51]. Tracy further noted that one quadrillion is "equal to a million, billion." [*Id.*].

20

The state presented ample evidence regarding the collection and testing of the DNA evidence. Multiple witnesses testified under oath. Petitioner's claim that these witnesses were lying is baseless and was properly rejected by the state courts.

The trial court's rejection of this claim in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claim 7**, Petitioner asserts that the state's witness, Ms. Baird, was not qualified to give expert testimony regarding DNA. [ECF No. 1 at 12]. Under **Claim 8**, Petitioner asserts that defense counsel was ineffective in failing to investigate Ms. Baird's qualifications as an expert. [ECF No. 1 at 12-13].

Claim 7 is refuted by the record. Section 90.702, Florida Statutes (1996) governed the testimony by experts at the time of Petitioner's trial and provided:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion; however, the opinion is admissible only if it can be applied to evidence at trial.

Lynn Baird testified that she had been a DNA specialist with the BSO Crime Lab for the past 18.5 years. [T. 302, 304-06]. This testimony demonstrated that she was qualified as an expert in forensic DNA and had the ability to render an expert opinion pursuant to Fla. Stat. § 90.702.

Because Baird was qualified as an expert, defense counsel's failure to investigate her qualifications or object to her testimony on this ground did not constitute ineffective assistance of counsel. Counsel is not ineffective for failing to raise non-meritorious issues. *See Chandler*, 240 F.3d at 917. Nor is counsel required to present every non-frivolous argument. See *Dell*, 710 F.3d at 1282. As a result, Petitioner's argument under Claim 8 also fails.

The trial court's rejection of these claims in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

Under **Claims 9 and 10**, Petitioner presents as "newly discovered evidence" a report from the American Society of Crime Laboratory Directors, Laboratory Accreditation Board, which discusses certain deficiencies with DNA testing. [ECF No. 1 at 13-14].

On October 27, 2016, the state filed notice with Petitioner pursuant to Fla. R. Crim. P. 3.220(b)(4) and *Brady v. Maryland*, 373 U.S. 83, 87 (1963), which provided:

> Please be advised that on April 12, 2016, the Broward Sheriff's Office (BSO) DNA Crime Laboratory was advised by the American Society of Crime Laboratory Directors/Laboratory Accreditation Board that there was, "[I]nappropriate use of the statistic known as the Combined Probability of Inclusion (CPI) to calculate statistical significance of occurrence of genetic profiles when allelic dropout is known and/or suspected to have occurred." We have been advised that CPI calculations were only used by the BSO DNA Crime Lab in complex DNA mixture cases. Documents regarding this matter may be found at http://www.saol7.state.fl.us/BSODNA_ASCLD.pdf
>
> This notice is being sent to you because our records indicate that you were a party in this case and there may have been DNA evidence tested by the Broward Sheriff's Office Crime Laboratory. If there was DNA evidence in your case, there has not been a determination whether the CPI calculations were utilized or whether the evidence was relevant in your particular case. This matter is being brought to your attention because the DNA population genetic calculations may have been inaccurately tabulated. Please contact your attorney to further discuss this information.

[ECF No. 35-2 at 186].

Importantly, the notice provided that CPI was only used in "complex DNA mixture cases." [*Id.*]. This case did not involve a complex DNA mixture. The sample only contained DNA from the victim and a male contributor. The state's experts testified how it was possible to separate the two DNA samples for testing purposes. The DNA results identified Petitioner, to a reasonable scientific certainty, rarer than 1 in 30 billion as the odds of selecting an unrelated individual at

random in the population who would also match these results. [ECF No. 35-1 at 20-23, 2009 BSO

Crime Lab DNA Test Results]. Lynn Baird's report did not indicate that the findings were made

based on CPI calculation. [*Id.*]. As a result, the "new evidence" of the state's using the wrong

protocol when testing DNA was not relevant in Petitioner's case.

Petitioner appears to be alleging a *Brady* violation. In order to establish a *Brady* violation,

the petitioner must prove:

> (1) the government possessed favorable evidence to the defendant; (2) the
> defendant does not possess the evidence and could not obtain the evidence with any
> reasonable diligence; (3) the prosecution suppressed the favorable evidence; and
> (4) had the evidence been disclosed to the defendant, there is a reasonable
> probability that the outcome would have been different.

*United States v. Stein*, 846 F.3d 1135, 1145-46 (11th Cir. 2017); *see also Floyd v. State*, 902 So.

2d 775, 779 (Fla. 2005).

Petitioner cannot establish a *Brady* violation in this case. At the time of Petitioner's 2011

trial, the state did not possess the information regarding the CPI testing protocols. As a result, the

state did not suppress any favorable evidence. Furthermore, there is not a reasonable probability

that the outcome would have been different where the CPI calculation was not used in Petitioner's

case. *See* [ECF No. 35-1 at 30-23].

Petitioner also argues that the trial court failed to appropriately apply the *Frye*[2] standard

for scientific expert testimony. Pursuant to *Frye*, the proponent of scientific evidence must prove

the methodology used has gained general acceptance in the scientific community. *Zack v. State*,

911 So. 2d 1190, 1197 (Fla. 2005). However, a *Frye* hearing is not necessary when the science at

issue is not new or novel. *Id.* at 1198.

---

[2] *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923).

DNA evidence is not new or novel and is generally accepted in Florida so long as the testing procedures are properly conducted. *See Hayes v. State*, 660 So. 2d 257 (Fla. 1995) (taking judicial notice that DNA test results are generally accepted so long as the testing procedures are accepted); *see also Martinez v. State*, 549 So. 2d 694, 697 (Fla. 5th DCA 1989) (noting the scientific basis for fingerprint testimony is well-established and accepted); *Kennedy v. State*, 853 So. 2d 571 (Fla. 4th DCA 2003) (enhancement of otherwise available evidence—fingerprints—was not an innovative scientific theory).

Petitioner has not shown in the state forum or this habeas proceeding how the state's procedures were faulty or how these procedures affected the DNA results that positively identified Petitioner. In fact, the 2009 test of the vaginal swab found DNA evidence matching both Petitioner and the victim. The trial transcript contains exhaustive testimony from the state's expert describing the DNA collection procedures, analysis methods, and chain of custody. *See* [T. 309-16, 326]. Furthermore, Petitioner was afforded the opportunity to extensively cross-examine Baird regarding the reliability issues associated with the DNA testing in this particular case, even highlighting how Margaret Ewing at Bode was originally unable to obtain a DNA match even though she tested the sample twice.

Given the foregoing, it cannot be said that trial court's admission of the DNA evidence was fundamentally unfair, such that the court violated Petitioner's constitutional right to due process. *See Taylor*, 760 F.3d at 1295 (holding that habeas relief is warranted only when the state court's error of evidentiary law "so infused the trial with unfairness as to deny due process of law.").

The trial court's rejection of these claims in the Rule 3.850 proceedings, affirmed by the appellate court, is not contrary to or an unreasonable application of federal constitutional principles. As such, it should not be disturbed here. *See Williams*, 529 U.S. at 413.

## VI. Cautionary Instruction Regarding the *Clisby* Rule

Finally, this Court has considered all of Petitioner's claims for relief, and arguments in support. *See Dupree v. Warden*, 715 F.3d 1295, 1298 (11th Cir. 2013) (citing *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992)). For all of his claims, Petitioner has failed to demonstrate how the state courts' denial of the claims, to the extent they were considered on the merits in the state forum, were contrary to, or the product of an unreasonable application of, clearly established federal law. To the extent they were not considered in the state forum, as discussed in this Report, none of the claims individually, nor the claims cumulatively, warrant relief. Thus, to the extent a precise argument, subsumed within any of the foregoing grounds for relief, was not specifically addressed here or in the state forum, all arguments and claims were considered and found to be devoid of merit, even if not discussed in detail here.

## VII.  Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). To determine whether an evidentiary hearing is needed, the question is whether the alleged facts, when taken as true, are not refuted by the record and may entitle a petitioner to relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing is not required.

## VIII.  Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his or her petition for

writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court should deny a certificate of appealability. Notwithstanding, if Petitioner does not agree, Petitioner may bring this argument to the attention of the District Judge in objections.

## IX. Conclusion

Based upon the above, it is recommended that:

1.      the federal habeas petition be DENIED;

2.      a certificate of appealability be DENIED; and,

3.      the case CLOSED.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar petitioner from a *de novo* determination by the District Judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Judge, except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *see also RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993).

SIGNED this 4th day of November, 2020.

UNITED STATES MAGISTRATE JUDGE

26

cc:    **Cecil Tolbert**
037846
Wakulla Correctional Institution
Inmate Mail/Parcels
110 Melaleuca Drive
Crawfordville, FL 32327
PRO SE

**Heidi L. Bettendorf**
Attorney General's Office
1515 N Flagler Drive
Suite 900
West Palm Beach, FL 33401-3432
561-837-5000
Fax: 837-5099
Email: CrimAppWPB@MyFloridaLegal.com