UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 17-62407-CIV-MORENO

CECIL TOLBERT,

        Petitioner,

vs.

STATE OF FLORIDA and PAMELA JO
BONDI, in her official capacity as Attorney
General of the State of Florida,

        Respondents.

_____/

## ORDER DENYING PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS

Petitioner, Cecil Tolbert, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 stemming from his state court criminal conviction for armed kidnapping and sexual battery. Petitioner argues he is entitled to habeas corpus relief on various claims, including ineffective assistance of counsel, the State of Florida's and the trial court's violations of due process, and a *Brady* violation for the State's nondisclosure of exculpatory DNA evidence. Having found Petitioner's claim meritless, the Court denies habeas corpus relief.

## FACTUAL BACKGROUND

The following factual recitation comes from the Fourth District Court of Appeal's decision affirming Petitioner's conviction on direct appeal, *Tolbert v. State*, 114 So. 3d 291, 292 (Fla. 4th DCA 2013), and is presumed correct, § 2254(d)(2), (e)(1). Because Petitioner has not presented clear and convincing evidence to the contrary or shown that these factual findings are unreasonable, the Court may adopt the recitation in ruling on the Petition.

1

In 2011, Petitioner "was convicted of one count of armed kidnapping and two counts of sexual battery with the use or threatened use of a deadly weapon." The trial court sentenced him "to life imprisonment for the kidnapping charge and thirty years each for the sexual battery charges, with all sentences to run concurrently." The following evidence was introduced at trial.

"On July 11, 1996, the victim was walking to a store at about 1:30 a.m." "As the victim was walking, a man drove his car near the victim, threatened her with a gun, and told the victim to get into the car." "The victim got into the car, and the man drove to an area behind a warehouse." "The man forced the victim to perform oral sex on him and vaginally raped her." "At some point, the back of the victim's head was injured and she passed out or fell asleep." "When the victim awoke, the man sexually assaulted her again." "The man then released the victim."

"The victim went to a hospital and was treated for the injury on the back of her head." "The victim then went to a sexual assault treatment center, where a nurse practitioner took vaginal swabs." "The swabs were sealed and sent to the Broward Sheriff's Office ('BSO')."

"Kevin Noppinger, a DNA analyst with the BSO, analyzed the swabs using restriction fragment length polymorphism (RFLP) testing." "Noppinger found male DNA in the swabs taken from the victim, but the DNA profile did not match any known suspect."

"By 2001, DNA technology had advanced to a method called short tandem repeat (STR)." "RFLP results and STR results cannot be compared, so older DNA samples that had been tested using the RFLP method had to be retested using the STR method." "BSO had insufficient resources to retest the older samples, and in 2003 the federal government provided a grant to allow BSO to outsource the retesting of older DNA samples to reduce the backlog." "BSO selected older DNA samples that had yielded RFLP results and outsourced the samples to Bowdy Technology ('Bowdy') for STR testing." "Bowdy tested the samples from the victim's case." "The Bowdy

analysts found the victim's DNA in the samples but, unlike BSO analyst Noppinger, the Bowdy analysts did not find male DNA in the portion of the victim's samples they tested."

"Bowdy reported its results to BSO." "Lynn Baird, a BSO DNA analyst, hypothesized that there must have been male DNA in the samples taken from the victim because Noppinger had found it during the 1996 testing." "Assuming that the STR testing performed by Bowdy may have simply failed to detect the male DNA, Baird herself retested the victim's samples and, in fact, found male DNA." "Using the STR method, Baird isolated the male DNA profile and provided it to the Combined DNA Index System (CODIS), a federal database of DNA profiles."

"CODIS matched the male DNA profile from the victim's sample to [Petitioner's] DNA sample." "BSO then located [Petitioner] and received a DNA sample from him, which Baird then compared to the male DNA sample she recovered from the victim's sample." "Baird determined [Petitioner's] DNA was in the victim's sample . . . ."

"At the 2011 trial, the victim was unable to remember several portions of the 1996 incident." "The victim was unable to identify [Petitioner] as the man who raped her and the state's primary evidence of [Petitioner's] involvement in the crime was the DNA evidence."

"Baird explained that the manner in which Bowdy tested the samples could account for the failure to find the male DNA in the sample." "An analyst from Bowdy who tested the samples testified that occasionally a DNA profile was missed when only a portion of the samples were tested." "The Bowdy analyst also testified that she herself had missed such samples in the past."

"Baird explained to the jury that she retested the samples, found male DNA, and isolated the male DNA profile." "Baird also testified that after [Petitioner's] DNA profile was provided to her, she compared [Petitioner's] DNA to the male DNA in the sample taken from the victim." "Baird testified that [Petitioner's] DNA was in the sample taken from the victim."

"Martin Tracey, a biology professor specializing in population genetics, testified that the odds of reaching into the human population and pulling out another individual with the same genetic sequence as [Petitioner] were approximately one in four hundred and eighty-seven quadrillion."

## PROCEDURAL HISTORY

The Florida Fourth District Court of Appeal affirmed the Petitioner's convictions and the Florida Supreme Court denied his petition for review. *Tolbert*, 114 So. 3d 292; **(D.E. 55)** at 6.

On **September 8, 2014**, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. On **March 24, 2017**, the trial court denied the 3.850 Motion, as well as the Supplemental 3.850 Motion, and the Motion for Newly Discovered Evidence in a reasoned order that incorporated by reference the arguments in the State's responses.

The Petitioner appealed and the Florida Fourth District Court of Appeal affirmed without comment.

Petitioner timely filed his Petition in this federal habeas case. **(D.E. 1)**; *see also* **(D.E. 31)**. The State responded. **(D.E. 34)**. Petitioner replied. **(D.E. 43-1)**.[1]

## LEGAL STANDARD UNDER § 2254(d)

Section 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

---

[1] The Court gave Petitioner permission to file an overlength reply but declined to "consider any new claims raised for the first time." **(D.E 48)**.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1)'s "contrary to" clause, courts may grant the writ if the state court: (1) reaches a conclusion on a question of law opposite to that reached by the Supreme Court; or (2) decides a case differently than the Supreme Court has on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under its "unreasonable application" clause, courts may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the case. *Id.* at 413. "[C]learly established Federal law" consists of Supreme Court "precedents as of the time the state court renders its decision." *Greene v. Fisher*, 565 U.S. 34, 38 (2011) (citation and emphasis omitted).

An unreasonable application of federal law differs from an incorrect application of federal law. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Under this standard, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Courts "apply this same standard when evaluating the reasonableness of a state court's decision under § 2254(d)(2)." *Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015) (citations omitted). That is, "[a] state court's . . . determination of the facts is unreasonable only if no

5

fairminded jurist could agree with the state court's determination." *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (citations and quotation marks omitted).

If the last state court to decide a prisoner's federal claim provides an explanation for its decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But where the decision of the last state court to decide a prisoner's federal claim contains no reasoning, federal courts must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* "It should then presume that the unexplained decision adopted the same reasoning." *Id.*

## LEGAL STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

To establish a claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, he must show that counsel's performance "fell below an objective standard of reasonableness" as measured by prevailing professional norms. *Id.* at 688. Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. "[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief." *Pinkney v. Sec'y, DOC*, 876 F.3d 1290, 1297 (11th Cir. 2017) (collecting cases).

To prove prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Counsel's failure to raise a meritless claim is not prejudicial under *Strickland. Hittson v. GDCP Warden*, 759 F.3d 1210, 1262 (11th Cir. 2014).

It is "all the more difficult" to prevail on a *Strickland* claim under § 2254(d). *Richter*, 562 U.S. at 105. As the standards that *Strickland* and § 2254(d) create are both "highly deferential," review is "doubly" so when the two apply in tandem. *Id.* (citation omitted). Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable." *Id.* Rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

A § 2254 petitioner's allegations "must meet heightened pleading requirements" under Rule 2 of the Rules Governing § 2254 Cases. *McFarland v. Scott*, 512 U.S. 849, 856 (1994). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Conclusory allegations of ineffective assistance are insufficient for relief under § 2254 or *Strickland. See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012). Likewise, a petitioner is not entitled to an evidentiary hearing under § 2254 "when his claims are merely conclusory allegations unsupported by specifics." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation and quotation marks omitted).

Petitioner has the burden of proof on his ineffectiveness claims. *Holsey*, 694 F.3d at 1256. Likewise, he has the burden of proof under § 2254 generally, *Garlotte v. Fordice*, 515 U.S. 39, 46 (1995), and § 2254(d) specifically, *Cullen v. Pinholster*, 563 U.S. 170, 187 (2011).

## DISCUSSION

The Petition alleges **16 claims**: 1A–1E, 2–4, 6A–6B, 7–8, 9A–9B, and 10A–10B. The discussion starts with claims 1A, 3, and 4 because they are procedurally defaulted. The remaining claims are addressed in turn.

### A.    Claims 1A, 3, and 4

7

Claim 1A alleges that defense counsel ineffectively failed to provide Petitioner with witness depositions before trial. Claim 3 alleges that the evidence was insufficient to support the jury's factual finding that a firearm was used during the crimes. Claim 4 alleges that law enforcement officers coerced the victim to identify Petitioner as the assailant with an improper identification process.

The Report and Recommendation recommended denying these claims on the merits and declined to address whether they were procedurally barred. In its Objections, the State contends that the Magistrate Judge should have enforced the procedural bar. In support, the State notes that Petitioner did not present claims 3 and 4 on direct appeal and abandoned claim 1A when he appealed the denial of his 3.850 Motion.

Initially, in his Reply, Petitioner conceded that these claims were procedurally barred. Then, in his Objections, he challenged the Magistrate Judge's rejection of these claims on the merits.

"A State's procedural rules are of vital importance to the orderly administration of its criminal courts; when a federal court permits them to be readily evaded, it undermines the criminal justice system." *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). Therefore, federal habeas courts should ordinarily resolve whether a claim is procedurally barred before considering its merits. *Id.*; *accord Johnson v. Lee*, 136 S. Ct. 1802, 1807 (2016) (per curiam). Here, because the record clearly reflects that Petitioner failed to raise claims 1A, 3, and 4 on appeal, the R&R should have applied this manifest procedural bar.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

(citation omitted). "To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim." *Id.* (cleaned up); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."). Regarding Rule 3.850 motions, "exhaustion usually requires not only the filing of a . . . 3.850 motion, but an appeal from its denial." *Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) (per curiam) (citation omitted).

"A claim is procedurally defaulted for purposes of federal habeas review if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present [the claim] in order to meet the exhaustion requirement would now find the claim[] procedurally barred." *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 956–57 (11th Cir. 2016) (alterations in original) (citation and quotation marks omitted).

The procedural rule under which the state court would find the claim barred must be "adequate and independent." *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003). To be independent, the state procedural ruling "must rest solidly on state law grounds[] and [] not be intertwined with an interpretation of federal law." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001) (citation and quotation marks omitted). "State rules count as adequate if they are firmly established and regularly followed." *Lee*, 136 S. Ct. at 1804 (citation and quotation marks omitted).

Petitioner cannot return to the Fourth District to raise claims 1A, 3, and 4 because he did not raise them in his initial brief. *Hoskins v. State*, 75 So. 3d 250, 257 (Fla. 2011) (holding that an "issue not raised in an initial brief is deemed abandoned"). This rule is independent and adequate.

9

*LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260 (11th Cir. 2005); *Thomas v. Crews*, No. 3:12CV128/LAC/EMT, 2013 WL 3456978, at *14 n.8 (N.D. Fla. July 9, 2013) (collecting cases).

When a prisoner has procedurally defaulted his claims, "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice (i.e., actual innocence)." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner bears the burden of establishing cause and prejudice or actual innocence. *See Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1354 (11th Cir. 2012); *Griffin v. McNeil*, 667 F. Supp. 2d 1340, 1352 (S.D. Fla. 2009) (Moore, J.).

Petitioner "has not presented [the Court] with any argument about cause and prejudice . . . to overcome the procedural bar." *Griffin*, 667 F. Supp. 2d at 1352.

"To establish actual innocence, [the] petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation and internal quotation marks omitted). Petitioners must support claims of actual innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence[.]" *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner essentially argues throughout his papers that he is actually innocent. He bases this contention on a **February 21, 2016** investigative report from the American Society for Crime Laboratory Directors/Laboratory Accreditation Board in response to a complaint from Tiffany Roy, a private DNA consultant alleging that the Broward Sheriff's Office Crime Laboratory was "using inappropriate procedures and a misapplication of statistical procedure." More specifically, Roy alleged:

10

1.    Inappropriate consideration of submitted known reference samples to determine loci that will be selected for statistical calculation purposes.

2.    Inappropriate use of the statistic known as the Combined Probability of Inclusion ("CPI") to calculate statistical significance of occurrence of genetic profiles when allelic dropout is known and/or is suspected to have occurred.

3.    Use of the FBI population database to calculate statistics.

"The allegation of [] three primary issues [arose] from [Roy's] review of [a] specific case," although she believed that these issues "exist[ed] in other cases she ha[d] reviewed/[was] reviewing" from the Broward Sheriff's Office Crime Lab. The subject case involved "several DNA profiles, one being a partial mixed DNA profile recovered from the handle of a knife." "The DNA mixture results were compared to known reference sample profiles from two individuals, one being the defendant, and calculations to assess the statistical significance of occurrence of the evidentiary genetic profile were performed using the CPI."

The Report sustained many of Roy's allegations. Yet the Report noted that both Roy and the Broward Sheriff's Office Crime Lab "acknowledge[d] that the topic of statistical calculations used to evaluate the significance of occurrence of DNA mixed profiles [was] under debate in the scientific community." Further, the Report noted that "the validations and methods used by" the Broward Sheriff's Office Crime Lab had "previously undergone review and assessment pursuant to FBI QAS requirements and" the American Society for Crime Laboratory Directors/Laboratory Accreditation Board's (ASCLD) requirements and had "been accepted as meeting relevant requirements during those reviews."

On **November 11, 2016**, the State sent Petitioner a Notice Pursuant to Florida Rule of Criminal Procedure 3.220(b)(4) that it possessed the Report, which may have fallen within the

purview of *Brady v. Maryland*, 373 U.S. 83 (1963) ("*Brady* Notice"). The *Brady* Notice stated that, on **April 12, 2016**, the Broward Sheriff's Office Crime Lab "was advised by the [ASCLD] that there was, '(I)nappropriate use of . . . (CPI) to calculate statistical significance of occurrence of genetic profiles when allelic dropout is known and/or suspected to have occurred.'" The *Brady* Notice also stated that "CPI calculations were only used by the BSO DNA Crime Lab in complex DNA mixture cases." The *Brady* Notice further stated that, "[i]f there was DNA evidence in your case, there has not been a determination whether the CPI calculations were utilized or whether the evidence was relevant in your particular case."

Here, Petitioner has not shown that he is actually innocent. The Report does not exculpate him. Liberally construed, the Report reflects ASCLD's determination that there were certain methodological and statistical problems with the BSO Crime Lab's procedures for analyzing mixed DNA samples. However, the Report did not exonerate the defendant in the case that Roy reviewed, much less a defendant in any other case. There are no facts in the record linking the Report's specialized findings to Petitioner's case or explaining how the problems the Report identified show that the State's DNA experts incorrectly concluded that Petitioner's DNA matched DNA recovered from the victim's vagina.

There are no facts in the record linking the Report's specialized findings to Petitioner's case or explaining how the problems the Report identified show that the State's DNA experts incorrectly concluded that Petitioner's DNA matched DNA recovered from the victim's vagina.

The Florida trial court denied this Motion for newly discovered evidence. Pertinently, it reasoned that Dr. Tracey did the only population genetic calculation, not anyone at the BSO Crime Lab. Petitioner's Motion for DNA Evidence Examination was also denied. The trial court reasoned that: (1) the *Brady* Notice stated that "there was not a determination that CPI calculations were

12

utilized" in Petitioner's case; and (2) "[n]othing in the testimony of Lynn Baird . . . or [Dr.] Martin Tracey reflects that . . . CPI was used in the statistical analysis." The record supports these findings. **(D.E. 35-1)** at 21–23 (Baird's report); **(D.E. 36-1)** at 302–41 (Baird's testimony); **(D.E. 36-1)** at 345–57 (Dr. Tracey's testimony). Therefore, Petitioner has not shown that the State used CPI in his case. And, even if it did, Petitioner has not adequately explained how its use undermines the specific findings of Baird and Dr. Tracey.

Accordingly, Petitioner has not shown that, in light of all the evidence, including the Report, it is more likely than not that no reasonable juror would have convicted him. Consequently, claims 1A, 3, and 4 are procedurally defaulted.

In sum, the Court dismisses claims 1A, 3, and 4 as procedurally defaulted and declines to rule on the merits, but overrules the Petitioner's objections.

### B.   Claim 1B

In claim 1B, Petitioner alleges that counsel ineffectively failed to move to suppress DNA evidence and object to its admission at trial. He reasons that "DNA [e]vidence was found not to include or implicate [him] on two separate occasions by an independent Lab 'Bode'[.]" The Court agrees with the Magistrate Judge's conclusion that Petitioner "mischaracterizes the DNA testimony" and "fails to allege any ground upon which the trial court could have excluded the DNA evidence."

Petitioner further contends, based on the Report, that the BSO Crime Lab was using the "wrong testing protocol." However, the Report was issued in **February 2016** based on Roy's **October 2015** complaint. Petitioner's trial started on **November 28, 2011**. (D.E. 36-1) at 1. So counsel could not have moved to suppress the State's DNA evidence based on the Report. *See Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort

13

be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). The Magistrate Judge's findings regarding this claim are **ADOPTED** and Petitioner's objections **OVERRULED**.

C.     **Claim 1C**

Petitioner alleged that counsel ineffectively failed to retain a DNA expert to challenge the State's DNA expert. "The Petitioner's expert would have acknowledged the inappropriate and uncertified protocol for testing mixed DNA." "This would have made Ms. Baird['s] testimony inadmissible."

In rejecting this claim, the trial court found that counsel's decision not to call a DNA expert was not prejudicial because: (1) counsel raised a defense based on consensual sexual contact and conflicts in the evidence; (2) counsel thoroughly cross-examined Baird; and (3) Petitioner's allegations of prejudice were speculative because he did not identify an expert who could have challenged Baird's conclusions. The Magistrate Judge's findings are consistent with the trial court's conclusions. Petitioner's objections are largely nonresponsive and take for granted, without an adequate factual showing, that an expert would have provided helpful testimony. *see Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (per curiam) ("Where ineffective assistance is based on counsel's failure to call a witness, the burden to show prejudice is heavy because 'often allegations of what a witness would have testified to are largely speculative.'" (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006))). The Magistrate Judge's findings regarding this claim are **ADOPTED** and Petitioner's objections **OVERRULED**.

D.     **Claim 1D**

Petitioner alleges that counsel ineffectively failed to retain a mental health expert to "explain the effects of schizophrenia and psychotic medication and the mental state of the victim." The trial court held that Petitioner could not show prejudice. It reasoned that counsel "effectively cross-examined the victim about her mental state at the time of the crime, and her ability to remember, and attacked the reliability of the victim based on her inconsistency due to her mental health condition." The Magistrate Judge reached the same conclusion. **(D.E. 55)** at 15. Petitioner has identified no error in those findings, which are **ADOPTED** and Petitioner's objections **OVERRULED**.

### E.   Claim 1E

Petitioner contends that counsel ineffectively failed to object to Baird's hearsay testimony referencing Noppinger's RFLP testing in 1996, thus failing to preserve his right to confront the witnesses against him. The trial court held that the record refuted this claim. The Magistrate Judge so found as well; counsel objected to the testimony. Indeed, appellate counsel raised this issue. *Tolbert*, 114 So. 3d 293–95.

Petitioner contends that the report and Baird's testimony about it violated the Confrontation Clause. However, despite his reference to his Sixth Amendment right to confront the witnesses against him, Petitioner raised this claim in terms of ineffective assistance. The Magistrate Judge in the report so construed the claim. Notably, in his Reply, Petitioner did not challenge the resolution of this claim or finding that it argued ineffective assistance. Because Petitioner raised this claim in terms on ineffective assistance, and because he acquiesced in the Magistrate Judge's construal of it, the Court declines to consider his Confrontation Clause argument. *Williams v. McNeil*, 557 F.3d 1287, 1291 (11th Cir. 2009) ("[T]he district court has broad discretion in reviewing a magistrate judge's report and recommendation [and] . . . did not abuse its discretion

in declining to consider [the petitioner's] . . . argument that was not presented to the magistrate judge.").

In any event, this claim lacks merit. Confrontation Clause violations are subject to harmless error analysis under *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Al-Amin v. Warden Ga. Dep't of Corr.*, 932 F.3d 1291, 1302 (11th Cir. 2019) ("On federal collateral review, . . . we review an alleged Confrontation Clause error under *Brecht*'s actual prejudice standard."). "Under *Brecht*, [the Court] cannot grant habeas relief unless [it has] grave doubt that the constitutional error had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 1298 (citation and quotation marks omitted). "To prevail, a petitioner must show actual prejudice from the constitutional error." *Id.* at 1299 (citation and quotation marks omitted). "To show prejudice under *Brecht*, there must be more than a reasonable possibility that the error contributed to the conviction or sentence." *Id.* (citation omitted).

Here, Petitioner cannot satisfy *Brecht*. On direct appeal, the Fourth District found that the trial court's erroneous admission of Baird's hearsay testimony about Noppinger's findings was harmless. *Tolbert*, 114 So. 3d at 295. In so concluding, it reasoned that "Baird's discussion of Noppinger's findings established why Baird chose to retest the victim's sample after Bowdy did not find male DNA in the sample; Noppinger's findings did not independently establish Tolbert's guilt." *Id.* "Baird did not consult with Noppinger to reach her conclusion or rely on any of his conclusions; she independently tested the victim's sample and determined that the male profile matched Tolbert." *Id.* "Baird's discussion of the 1996 testing bolstered her expert opinion only to the extent that it supported her finding that there was male genetic material in the sample taken from the victim." *Id.* "The more important portion of Baird's testimony was that the male profile

in the victim's sample matched Tolbert, and the 1996 test results were never matched to Tolbert." *Id.*

For these reasons, Petitioner cannot show more than a reasonable possibility that Baird's testimony about Noppinger's findings about an "un-matched DNA profile" contributed to the jury's verdict. *See id.* Accordingly, the Court **ADOPTS** the Report and Recommendation's findings regarding this claim and **OVERRULE** Petitioner's objections. The Petitioner raises a new Confrontation Clause claim in his Objections, but this claim lacks merit.

**F.    Claim 2**

Petitioner contends that the trial court violated due process by admitting Baird's testimony about Noppinger's findings over counsel's objection. The trial court construed this as a claim of trial court error and rejected it on the ground that Petitioner could have raised it on direct appeal. The Magistrate Judge found that Petitioner raised the same claim on direct appeal and concluded that the Fourth District did not unreasonably reject it. In his Objections, Petitioner appears to contend that the R&R did not address the constitutional aspect of this claim. Furthermore, he repeats the contention, raised throughout his Objections, that Baird used improper test protocol when performing her DNA analysis. Because this claim's record is untidy, the Court should review it *de novo. Conner v. GDCP Warden*, 784 F.3d 752, 767 (11th Cir. 2015) (courts may deny a claim under *de novo* review "without resolving whether AEDPA deference applies").[2]

The Petition alleges due process violations based on the admission of Noppinger's findings. As the R&R correctly notes, evidentiary errors warrant habeas relief only where they "so infuse the trial with unfairness as to deny due process of law." As set forth in the R&R, and as indicated

---

[2] At the end of its discussion, the Report and Recommendation stated that the claim failed even under *de novo* review. ECF No. 55 at 18.

above, the admission of testimony about Noppinger's findings did not render the trial fundamentally unfair; there is no indication that this testimony substantially contributed to the jury's verdict.

Petitioner's contention that Baird's testimony was inadmissible because she relied on improper testing protocol is conclusory. Moreover, he raised this contention for the first time in his Reply. So the Court need not consider it. *See, e.g., Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) (Dimitrouleas, J.) ("Because it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered." (citations omitted)).

The Court **ADOPTS** the Magistrate Judge's findings regarding this claim but also concludes that: (1) the Court reviewed the claim *de novo* and did not apply § 2254(d) deference; and (2) Petitioner did not show a due process violation for the reasons in the Report and Recommendation. Petitioner's objections are **OVERRULED**.

G.    <u>Claim 5</u>

Petitioner alleges that the State knowingly presented false evidence and perjured testimony in violation of due process. *See generally Napue v. Illinois*, 360 U.S. 264, 269 (1959). In support, he contends that the State used the "'wrong' DNA protocol" to test mixed DNA and solicited expert testimony based its knowing use of this "wrong protocol."

However, in his 3.850 Motion, Petitioner did not raise this argument. Rather, he raised rambling allegations about Baird's reliance on Noppinger's findings and the overall reliability of her testimony. He also alleged, conclusorily, that the State withheld Noppinger's report affidavit in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). The trial court held that the claim raised in

Petitioner's Rule 3.850 motion lacked merit. The Magistrate Judge agreed, finding that the trial court's conclusion did not violate clearly established federal law.

However, because the Magistrate Judge's Report does not address the claim raised in the Petition, the Court will review this claim *de novo*.

Claim 5 fails under *de novo* review. For starters, claim 5 is conclusory, and hence, insufficient for relief under § 2254 or an evidentiary hearing. *See Scott*, 512 U.S. at 856; *Dugger*, 941 F.2d at 1559; *see also Fordice*, 515 U.S. at 46.

Furthermore, as discussed above, the Report and *Brady* Notice do not show that the State's experts used the "wrong protocol" to test the mixed DNA sample at issue. The Report acknowledged that "the topic of statistical calculations used to evaluate the significance of occurrence of DNA mixed profiles [was] under debate in the scientific community." The Report further acknowledged that "the validations and methods used by" the BSO Crime Lab had "previously undergone review and assessment pursuant to FBI QAS requirements and" the ASCLD's requirements and had "been accepted as meeting relevant requirements during those reviews." And, critically, the ASCLD issued the Report several years after Petitioner's trial.

For their part, Baird and Dr. Tracey testified extensively about their qualifications, experience, and the methodology underlying their conclusions. *See Tolbert*, 114 So. at 293–94. And, on direct appeal, the Fourth District implicitly found that the State's DNA evidence was sufficient to support Petitioner's conviction. *See Tolbert*, 114 So. at 293, 295.

On this record, there is no indication that the State used "false" evidence or that any supposed false evidence was "known by the [S]tate to be false." *See Williams v. Griswald*, 743 F.2d 1533, 1542 (11th Cir. 1984). Consequently, claim 5 lacks merit.

In sum, the Court denies this claim under *de novo* review. Petitioner's objections are **OVERRULED**.

### H.    Claims 6A and 6B

In claim 6A, Petitioner alleges that the State violated due process "when [it] used forensic fraud by using protocols for testing mixed DNA that [were] not approved or certified by the" ASCLD and Scientific Working Group on DNA Analysis Methods ("SWGDAM"). In support, he alleges that the BSO Crime Lab's "protocol for testing mixed DNA were not in compliance" with the *Frye*[3] standard for the admissibility of scientific evidence.

Relatedly, in claim 6B, Petitioner alleges that some of the State's DNA test kits "have a certain allele drop out," which the State's DNA experts knew and used whenever it was "advantageous to their goal." The State's failure to disclose this method of DNA manipulation violated due process.

Under *de novo* review, the Court rejects these claims. As with claim 5, the Magistrate Judge's reasoning does not apply to the actual claims that Petitioner raised.

The contentions that the State violated due process by using DNA testing protocols that were not approved by the ASCLD and SWGDAM and knowingly manipulated DNA fail for the same essential reasons as claim 5. In short, these claims are unsupported, conclusory, and speculative.

Petitioner's contention that the BSO Crime Lab's DNA testing procedures did not comport with *Frye* is also conclusory. What he means by this is unclear. If he means that Baird's and Dr. Tracey's testimony violated due process because it was inadmissible under *Frye*, this claim would

---

[3] *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923), *superseded by statute as stated in Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993).

fail. In Florida, "[t]he *Frye* test is used to evaluate the admissibility of expert scientific opinion by ascertaining whether new or novel scientific principles on which an expert's opinion is based have gained general acceptance in the particular field in which it belongs." *Boyd v. State*, 200 So. 3d 685, 703–04 (Fla. 2015) (per curiam). So, "where the methodology was neither new nor novel, existing case law recognizes that a *Frye* hearing is not necessary." *Id.* at 704 (citations omitted).

Here, Petitioner has not shown that the State's methodology was new or novel. As the Fourth District found in affirming his conviction, "DNA technology had advanced to a method called short tandem repeat (STR)." *Tolbert*, 114 So. 3d at 293. Baird testified that she used this method when analyzing the sample at issue. STR was not new or novel in 2011 and would not have warranted a *Frye* hearing. *Boyd*, 200 So. 3d at 704; *Overton v. State*, 976 So. 2d 536, 553 (Fla. 2007) (per curiam). And Petitioner has not set forth any facts warranting a reasonable inference that some other aspect of their testimony was new or novel.

If Petitioner means that the admission of the testimony of the State's DNA experts was erroneous under Fla. Stat. 90.702 (2011), this contention is procedurally defaulted because he failed to raise it on direct appeal and cannot show actual innocence. This contention would also fail because it is conclusory.

In sum, the Court denies this claim under *de novo* review. Petitioner's objections are frivolous and are **OVERRULED**.

I.    Claim 7

Petitioner alleges that Baird was not qualified to testify as an expert because she was "written up for 2.2.72, which was appealed and sustained on November 2003." Further, he alleges that the State Attorney's Office knew of her "work history and her propensity to make inaccurate DNA analyses; which led to her misleading the jury with her testimony; she utilized uncertified

testing methods for testing mixed DNA." So the State's presentation of Baird as a witness allegedly violated due process.

In his 3.850 Motion, Petitioner challenged Baird's qualifications, but on different grounds than those raised here. The trial court denied that claim, and the Magistrate Judge's findings are consistent with the trial court's decision. Again, however, the Report and Recommendation invites the Court to defer to a state court ruling that does not address the particular claim at issue.

Claim 7 fails under *de novo* review. This claim is conclusory. Petitioner has not meaningfully alleged the reasons for which Baird was "written up." Nor has he explained how a work performance issue in a separate matter that occurred roughly 6 years before Baird prepared her 2009 DNA report undermined her testimony. And the conclusory allegation that she used uncertified testing methods for mixed DNA is unavailing for the reasons set forth above. Petitioner's objections are meritless and are **OVERRULED**. The claim fails under *de novo* review.

### J.    Claim 8

Petitioner alleges that counsel ineffectively failed to investigate Baird's qualifications "in the field of mixed DNA testing protocol." This failure allowed Baird to paint an inaccurate "picture in the minds of the jurors about how DNA can be missed in a DNA extraction for mixed DNA." Counsel also ineffectively failed to discover that Baird "was written up in the past for work performance issues."[4] The Magistrate Judge finds that the trial court reasonably rejected this claim. Yet the Report and Recommendation did not identify where Petitioner alleged this claim in state court.

---

[4] Although Petitioner alleges violations of due process and equal protection, he simply piggybacks these nominal claims onto his ineffectiveness claim. The purported due process and equal protection claims have the same factual predicate as the ineffectiveness claim and are wholly conclusory. Thus, they need not be addressed separately.

Yet, claim 8 fails under *de novo* review. This claim is not meaningfully distinct from the contention, addressed above, that counsel ineffectively failed to move to suppress the DNA evidence and object to its admission at trial. Again, because the ASCLD issued the Report over four years after Petitioner's trial, counsel could not have objected to the State's experts' testimony on that basis. *See Strickland*, 466 U.S. at 689. It is speculative to assert, as Petitioner does, that counsel would have discovered the problems the Report discusses had counsel investigated further. *See Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation."). And counsel reasonably could have concluded that any evidence about Baird's past work performance issue would have no probative force given its vague description and remoteness.

The Court overrules Petitioner's objections and denies the claim under *de novo* review.

### K.    Claim 9

Petitioner alleges a claim of "newly discovered evidence," which he alternately labels as a due process violation.

In claim 9A, Petitioner repeats the allegation that the BSO Crime Lab "was using the wrong protocol to test mixed DNA."

In claim 9B, he alleges that the BSO Crime Lab's "standards and protocols" did not meet the *Frye* standard. In support, he alleges that the BSO Crime Lab used CPI and that CPI's usage "in conjunction[] with a faulty FBI database gave an exaggerated and an inflated occurrence of a genetic profile."

The trial court rejected claim 9A on the ground that the Report's "alleged deficiencies" did not "prejudicially affect[]" Baird's testimony. It reasoned that: (1) Dr. Tracey did the only

population genetic calculation, not anyone at the BSO Crime Lab; (2) Petitioner based his defense at trial on conflicts of the evidence and consent; and (3) Petitioner stated at sentencing that someone "planted" the DNA. The record supports the first two findings. Furthermore, although the Court does not have the sentencing transcript, Petitioner does not dispute the third finding. So the trial court reasonably rejected claim 9A. Petitioner's Objections regurgitate findings from the Report, raise irrelevant matters, and are nonresponsive to the trial court's findings.

The Court denies this claim on the basis that the trial court reasonably rejected it. Petitioner's objections are **OVERRULED**.

Claim 9B is materially indistinguishable from claim 6A and is **DENIED** under *de novo* review for the same reasons.

L.      **Claim 10**

In claim 10A, Petitioner alleges a *Brady* violation "for non-disclosure of exculpatory DNA evidence/mixed DNA test protocol including uncertified population frequency statistics." This is a roundabout way of alleging that the State violated *Brady* by failing to disclose the Report. Likewise, claim 10B alleges that the "protocol for testing mixed DNA used by the" BSO Crime Lab "was unknown" to him and the trial court. These claims are one and the same.

Petitioner did not raise this *Brady* claim in his Motion for Newly Discovered Evidence. The Magistrate Judge recommended denying the claim on the ground that, at the time of Petitioner's trial, the State "did not possess the information regarding the CPI protocols." Thus, it cannot be said that the State "willfully or inadvertently" suppressed "evidence . . . favorable to [Petitioner]." *See Clark v. Att'y Gen., Fla.*, 821 F.3d 1270, 1289 (11th Cir. 2016) (citation omitted).

In his Objections, Petitioner contends that the State did not want to disclose that the Broward Sheriff's Office Crime Lab was using the allegedly improper methodology discussed in

the Report. Allegedly, the State wanted to keep using it on "unwary" defendants and avoid putting "a lot of [its] convictions in doubt." These contentions are unsupported and conclusory; there is no record evidence substantiating them. Furthermore, they take for granted that the issues the Report analyzes are exculpatory. But, as discussed above, the Report and the *Brady* Notice fail to show that the methodology the State used to analyze the mixed DNA sample here was flawed or that the State's findings were unreliable.

In sum, the Magistrate Judge's reasoning in denying the *Brady* claim is correct. This Court, however, need not adopt that portion of the Report, which recommends deferring to the state trial court's decision even though the state trial court was not ruling on the claim at issue. The Court denies the claim 10A under *de novo* review for the above reasons. Petitioner's objections are **OVERRULED**.[5][6][7]

## VII.    CONCLUSIONS

For the foregoing reasons, the petition is DISMISSED and the certificate of appealability is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this _13_ of October 2021.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[5] Throughout his Petition, Petitioner alleges violations of his right to a fair trial and equal protection in addition to due process violations. As explained in note 6, *supra*, Petitioner simply piggybacks these purported claims onto his primary due process and ineffectiveness claims. The piggybacked claims have the same factual predicate as the primary claims and are wholly conclusory. So they warrant no separate analysis.

[6] Any claims raised for the first time in Petitioner's Objections are not properly before the Court. *See McNeil*, 557 F.3d at 1291.

[7] Petitioner is not entitled to an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing [under § 2254].").